UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY RICHARD RENFRO,<br><br>Plaintiff,<br><br>v.<br><br>LISA CLARK-BARLOW,<br><br>Defendant. | No. 2:15-cv-0632 DB P<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. This matter proceeds against a single defendant, Family Nurse Practitioner ("FNP") Lisa Clark-Barlow, on an Eighth Amendment medical indifference claim. Defendant now moves for summary judgment, and plaintiff has filed a motion for leave to file a tardy motion for summary judgment. Because the Court finds that there is no dispute of material fact as to whether defendant violated plaintiff's rights, the undersigned will recommend that defendant's motion be granted. Plaintiff's motion for leave to file a tardy summary judgment motion will be denied.

////

////

## I. Plaintiff's Allegations

In 1998 (prior to incarceration), plaintiff was diagnosed as having endobronchial carcinoid tumor, which was not removed at the time due to circumstance. Plaintiff was then sentenced to imprisonment in 2004, and he arrived at Mule Creek State Prison ("MCSP") in Ione, California, in November 2004.

Upon his arrival at MCSP, plaintiff was examined by an intake doctor, Dr. Galloway, who made a medical notation that plaintiff suffers from chronic obstructive pulmonary disease ("COPD"), a heart condition, and diabetes. At this appointment and later during several other interactions with medical staff, plaintiff asked for removal of the tumor, but he was told either that "You're being seen for something else" or "You're an inmate. Inmates cannot diagnose themselves or demand treatment." After multiple denials, plaintiff "became afraid of mentioning his tumor to medical staff."

On December 27, 2005, plaintiff asked a MCSP physician, Dr. Hashimoto, for surgery to remove the tumor. While Dr. Hashimoto made note of plaintiff's tumor and COPD on an interdisciplinary progress note, he did not refer plaintiff to surgery. Following this interaction, plaintiff had other interactions with medical staff that caused plaintiff to fear that if he mentioned the tumor again, he would not receive treatment for it or his other medical conditions.

On April 30, 2014, plaintiff was seen by defendant FNP Lisa Clark-Barlow. When he informed her of his need for an inhaler and the carcinoid tumor, she refused to treat him. Instead, she accused plaintiff of lying and told him that she is not prescribing an inhaler for his COPD and not getting "involved in your imaginary cancer."

## II. Undisputed Facts[1]

At all relevant times, plaintiff was a state inmate housed at MCSP. Compl. 1 ¶ 2. Defendant was employed at MCSP as a family nurse practitioner. Decl. of L. Clark-Barlow Supp. of Def.'s Mot. Summ. J. (ECF No. 18) ¶ 1. As a FNP, defendant's responsibilities included examination of patients and diagnosing illnesses, prescribing medication, and administrating medical treatment. Clark-Barlow Decl. ¶ 3. She also provided comprehensive examination,

---
[1] All facts are undisputed unless noted otherwise.

evaluation, and treatment of patients; interpreted labs and imaging results; prescribed medications; took part in the institutional pain management committee; diagnosed; and referred to other specialists for higher level of care treatment. Id. ¶ 3.

In October 1997 (prior to his incarceration), plaintiff was seen at Tucson Medical Center Hospital in Tucson, Arizona with a problem list that included "[h]istory of chronic obstructive pulmonary disease." Compl. Ex. (ECF No. 1 at 21-25). During an evaluation, a carcinoid type lesion was noticed on his lung.

Plaintiff arrived at MCSP on November 4, 2004. See Pl.'s Opp'n Ex. 3. Plaintiff's early medical records at MCSP refer to lung cancer and COPD. For example, the medical intake form following plaintiff's November 2004 arrival at MCSP included a notation for "Lung Ca '97" and "? Hx Carcinoid Tumor…" A November 18, 2004, medical note included "? Carcinoid tumor?" Id. A December 27, 2005, medical note referenced "carcinoid tumor … 1997" and "COPD." See id. A December 2005 medication record included an inhaler. See id.

FNP Clark-Barlow was assigned as plaintiff's primary care provider ("PCP") from July 2011 through most of 2013. Clark-Barlow Decl. ¶ 6. During that time, FNP Clark-Barlow saw plaintiff for hypertension, diabetes, gastric reflux disease, coronary artery disease, hiatal hernia, H-Pylori, angina, headache, obesity, benign prostate hypertrophy, and hyperlipoidemia. Id. ¶ 8. She has never seen him for COPD or prescribed him an inhaler. Id. ¶ 7. The inhaler was not listed, either, on any of plaintiff's medication sheets from 2005-2006 or from 2011-2014.[2] Id. ¶ 10. Lastly, none of plaintiff's hospitalization records while defendant was his PCP mentioned COPD or an inhaler on his medication list. Id. ¶ 9.

In late 2013, FNP Clark-Barlow began working in the Treatment Triage Area ("TTA") where she saw plaintiff periodically. Clark-Barlow Decl. □ 6. In the TTA, FNP Clark-Barlow mainly addressed inmates' urgent medical needs and not chronic medical issues. Id.

On April 30, 2014, FNP Clark-Barlow saw plaintiff for diabetes mellitus type 2, hypertension, lower urinary tract symptoms, and chronic care provider follow-up. Clark-Barlow

---

[2] There is no mention of plaintiff's medication sheets from 2007-2010.

3

Decl. ¶ 12, Ex. A (ECF No. 18 at 35). Per defendant's notes of that appointment, "Pt. states he has lung cancer since 1995. CT of chest done in 1997 negative per problem list." Id. His problem list did not include COPD, history of lung cancer, or the endobronchial tumor, and he denied any shortness of breath. Id. ¶ 11, Ex. A (ECF No. 18 at 35).

On May 4, 2014, plaintiff filed a Patient / Inmate Health Care Appeal complaining about FNP Clark-Barlow's alleged refusal to treat his COPD and lung cancer. Compl. Ex. (ECF No. 1 at 10-12). As a result, Dr. James Jackson interviewed plaintiff on May 22, 2014, and noted a need for a work up of possible carcinoid tumor involving the endobronchial tree. Clark-Barlow Decl. Ex. A (ECF No. 18 at 36, 38). Possible COPD was also noted, and an inhaler was prescribed. Id. Plaintiff's appeal was then granted in part at the first level of review.

On July 28, 2014, plaintiff was seen at the San Joaquin General Hospital by a pulmonologist, Dr. Jamal Sadik. Clark-Barlow Decl. Ex. A (ECF No. 18 at 42-43). Dr. Sadik diagnosed plaintiff with endobronchial carcinoid tumor and determined that the location and size of the tumor could only be determined via a flexible fiberoptic bronchoscopy.

Plaintiff's grievance was granted in part at the second level of review on August 1, 2014. Compl. Ex. (ECF No. 1 at 15-17)

Defendant saw plaintiff again on August 12, 2014. Clark-Barlow Decl. Ex. A (ECF No. 18 at 39). Based on Dr. Sadik's examination and recommendation, FNP Clark-Barlow submitted a request for service for a fiberoptic flexible bronchoscopy. Clark-Barlow Decl. ¶ 13, Ex. A (ECF No. 18 at 40-41).

On November 18, 2014, Plaintiff's appeal was denied at the third level of review. Compl. Ex. (ECF No. 1 at 18-19).

A November 24, 2014, Primary Care Provider Progress Note completed by Dr. Jackson noted that plaintiff was not interested in a bronchoscopy at that time due to a risk of complications that could lead to death. Clark-Barlow Decl. Ex. A (ECF No. 18 at 44-45).

On April 27, 2016, he finally agreed to the bronchoscopy, which was performed at the San Joaquin General Hospital. Clark-Barlow Decl. Ex. A (ECF No. 18 at 48-49). A biopsy was then

completed on October 18, 2016, which revealed no malignant cells. Clark-Barlow Decl. Ex. A (ECF No. 18 at 50-51).

To date, plaintiff continues to decline surgery to treat the tumor because of concerns about the risks involved. See Pl.'s Dep. at 43:14-24 (ECF No. 18).

**III.     Legal Standards**

**A. Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.

However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**B. Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must

be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**IV.     Plaintiff's Motion for Leave to File Tardy Cross-Motion for Summary Judgment**

Before proceeding to the merits of Defendant's motion for summary judgment, the Court must first consider plaintiff's April 12, 2019, motion for leave to file a tardy summary judgment motion. (ECF No. 30.) Plaintiff's motion come nearly six months after the October 19, 2018, deadline to file dispositive motions pursuant to the Court's Discovery and Scheduling Order ("DSO"). (See ECF No. 14.) Plaintiff urges the Court to accept his late filing because he claims that he is unfamiliar with the law, he did not comprehend the nature of the Court's DSO, he did not understand the necessity of conducting discovery, and he did not know that he had the option to file a cross-motion for summary judgment. While the Court is sympathetic to plaintiff's plight, none of the reasons asserted demonstrate good cause or excusable neglect to extend the time for filing the summary judgment motion. Fed. R. Civ. P. 6(b); Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993) Accordingly, plaintiff's motion for leave to file a late motion for summary judgment will be denied.

**V.      Discussion**

   **A. Eighth Amendment Medical Indifference**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992)

(citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06; see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in

diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**B. Analysis**

Defendant moves for summary judgment on the ground that there is no dispute of material fact as to whether she demonstrated deliberate indifference on April 30, 2014. Alternatively, she contends that she is entitled to qualified immunity. Plaintiff counters that, when informed of his COPD and bronchial tumor, FNP Clark-Barlow dismissed Plaintiff's claims and refused to treat either condition.

The undisputed facts demonstrate that, prior to the April 30, 2014, incident at issue in this case, FNP Clark-Barlow served as plaintiff's PCP for approximately three years. During that time, defendant treated plaintiff for several conditions, but she was never aware of plaintiff's need for an inhaler for COPD or treatment for cancer. Accepting that plaintiff informed defendant of

his conditions on April 30 and further accepting that defendant did not believe him and did not provide necessary care, there is simply nothing in the record to demonstrate or even suggest deliberate indifference. At best, the allegations sound in negligence. Indeed, plaintiff's own characterization of defendant's conduct is that "Defendant should have had knowledge of Plaintiff using an inhaler and lung cancer if she had conducted her duties and responsibilities as a F.N.P. are prescribe[d]"; she "fail[ed] to properly review Plaintiff medical history as require[d] as standard care and consistent with the degree of knowledge and skill ordinarily posses[sed] and exercised by members of the medical profession under similar circumstances…"; and had she "properly [sic] and sufficiently perform[ed] her duties and responsibilities as a medical professional, she would have known of Plaintiff's medical conditions and medications." Opp'n at 2-3.

But defendant's failure to review Plaintiff's medical records and her alleged failure to meet the standard of care for someone of her profession cannot, standing alone, serve to impose liability under the Eighth Amendment because neither 'negligence' nor 'medical malpractice' can underlie a constitutional claim. Broughton, 622 F.2d at 460; see also Toguchi, 391 F.3d at 1057 ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835. In the absence of any facts that would actually suggest deliberate indifference, the Court must find that no rational trier of fact would conclude that defendant acted with deliberate indifference to plaintiff's medical needs. Summary judgment should therefore be entered for defendant. In light of this finding, defendant's alternative argument that she is entitled to qualified immunity will not be addressed.

**VI. Conclusion**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for leave to file a late motion for summary judgment (ECF No. 30) is DENIED;

11

2. The Clerk of Court is directed to assign a district judge to this case; and

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 18) be GRANTED and judgment be entered for defendant accordingly.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 24, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Priority/renf0632.msj.CJRA